UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOE FREDERICK, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-1455 |
| | § | |
| VERNON PITTMAN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM AND ORDER[1]

State inmate Joe D. Frederick (TDCJ #891510) filed a complaint under 42 U.S.C. § 1983, alleging violations of his civil rights in connection with the medical care or lack thereof that he received at the Jester III Unit.  He is represented by counsel and has been granted leave to proceed *in forma pauperis*.  After screening all of the pleadings as required pursuant to 28 U.S.C. ' 1915A, the Court requested an answer from the defendants.  The defendants Admarie Scott, Sandra Smock, Mary Kunthara and Susan Dostel filed a joint motion for summary judgment. (Docket No. 15).  The defendant, Doctor Edgal Holipas, filed a motion to dismiss.  (Docket No. 98).  Frederick and his attorney also filed responses.  (Docket Nos. 21 and 103).  After reviewing all of the pleadings, the record, and the applicable law, the motion for summary judgment is granted in its entirety and Holipas' motion to dismiss is treated as a motion for summary judgment; it too is granted.

---

[1] Previously, the Court entered its Memorandum and Order, denying the defendants' Admarie Scott, Sandra Smock, Mary Kunthara and Susan Dostal, motion and supplemental motion for summary judgment in part.  *See* (Docket Nos. 15 and 33).  Since discovery has been completed, the defendant, doctor Edgal Holipas, filed a motion to dismiss [Docket No. 98] *See* (Docket No. 23 Fn. 1).  Earlier, the Court dismissed the plaintiff's claims against Dr. Holipas *sua sponte.*  No order reinstating him as a party has been entered.  Nevertheless, the Court granted Holipas' motion to dismiss, but has now withdrawn it.  Now, the Court revisits the defendants' motion for summary judgment and treats Holipas' motion to dismiss as a motion for summary judgment in light of the discovery.

## I.     BACKGROUND

Frederick is in custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Pack Unit in Navasota.  His complaint concerns the adequacy of medical care that he received at the Jester III Unit, where he was formerly assigned in November of 2008.  Relative to this claim, Frederick sued the following health care providers employed by TDCJ or the University of Texas Medical Branch ("UTMB") at the Jester III facility: Nurse Admarie Scott, Nurse Practitioner Assistant Sandra Smock, Nurse Mary Kunthara, and Practice Manager Susan Dostal, and physician, Edgal Holipas.   Frederick's condition, the medical care that he has received, and his complaint are summarized below.

Public records reflect that Frederick was injured in a motor vehicle accident prior to his confinement at TDCJ.  He claims that he has "no, or little feeling, in [his] lower extremities" and that he is paralyzed from the waist down. As a result, Frederick is confined to a wheel chair.  In November of 2008, Frederick was housed in a dormitory at the Jester III Unit.  At approximately 5:20 a.m., on Sunday, November 9, 2008, Frederick fell while trying to transfer from his bed into his wheelchair.  He claims that he "broke [his] right leg at the 'femur,' just above the knee."  He describes the break as "clean through causing unnatural positioning of the leg which was obvious even to a layman."

After breaking his leg, Frederick got into his wheelchair and went to the infirmary. A nurse identified as defendant Scott looked at Frederick's leg, acknowledged that it was broken, but refused to let Frederick into the infirmary because there was a shift change in progress.  A security officer, identified as Lieutenant Powers, called the infirmary on Frederick's behalf and at 5:45 a.m., nurse Scott relented, allowing Frederick to enter the

infirmary.  She determined that his knee was injured and applied a splint or "immobilizer" to stabilize the leg.

Frederick claims that, at 7:45 a.m., another nurse identified as the defendant Mary Kunthara, contacted the defendant Sandra Smock, who is a nurse practitioner. After Smock and Kunthara discussed the extent of Frederick's injuries, Kunthara gave Frederick some Ibuprofen and a medical pass to return the following day, Monday, November 10, 2008, when an x-ray could be taken and for an appointment to see a physician.   He returned to his dorm.

On Monday at approximately 8:00 a.m., Frederick returned to the infirmary with the pass issued by nurse Kunthara.  At that time, he was told to return to his dorm because "the x-ray technician did not show up for work."  He explained that his leg was broken and asked to see a doctor.  According to Frederick, unidentified nurses remarked that he was paralyzed and could not feel anything anyway, refusing to help him.

Later that day, at approximately 5:30 p.m., Frederick contacted the defendant Susan Dostal, who is employed as the unit practice manager and who oversees the infirmary.  He states that Dostal was "shocked" to see that he was still "on the unit and not at [an] emergency room." Dostal reportedly told Frederick that she "would take care of it."  Nothing was done, however, and Frederick returned to his dorm.

Frederick returned to the infirmary again at 9:00 p.m., the same day because the immobilizer was causing blisters and "a pressure sore" and his leg above the knee began to swell.  Unidentified nurses at the clinic "re-wrapped the immobilizer" and sent him back to the dorm.  He complains that they would not call a doctor or an ambulance and did not give him additional pain medication.

On Tuesday, Frederick reports that he had difficulty getting out of bed because of the "intense swelling in [his] leg and soreness that extended up into [his] hip and lower back." Eventually, he returned to the infirmary for help only to be told by an unidentified nurse that the x-ray technician was on holiday (Veterans' Day) and no one else was available who could help him. By this time, the "intense swelling" in Frederick's broken leg was causing him "extreme mental and emotional pain and suffering." He was "extremely distraught" and "worried that the broken bone might cause a severed artery and internal bleeding or other further injury."

The following morning, Frederick returned to the clinic and asked to see a doctor. An x-ray was taken and an unidentified doctor or physician assistant confirmed that his leg was broken. By this time, Frederick claims, his leg was "swollen to twice its normal size and red from inflammation." Later that same day, Frederick was transported to LBJ Hospital in Houston for surgery and treatment. Surgery was performed on November 14, and he was released from the hospital on November 17.

Frederick claims that the defendants should have transported him to a hospital immediately after he broke his leg, instead he was not treated at a hospital until November 12. He complains that, as a result in the delay in treatment, his leg is visibly disfigured and it has healed in "an unnatural position and is twisted." He complains further that he endured "extreme mental anguish' and 'feelings of hopelessness" because he was denied timely medical treatment. Frederick alleges that, by denying prompt care, the defendants acted with deliberate indifference to a serious medical need in violation of the Eighth Amendment and the Americans with Disabilities Act (the "ADA"). He seeks compensatory and punitive damages.

After reviewing the complaint, the Court requested an answer from the health care providers whom Frederick identifies as primarily responsible for delaying access to care

for his broken leg, namely, nurse Scott, nurse practitioner Smock, nurse Kunthara, and practice manager ("pm") Dostal.[2]   These defendants filed a joint motion for summary judgment, along with affidavits and medical records, asserting entitlement to immunity from Frederick's claims. The parties' contentions are discussed below under the governing standards of review.

## II.    STANDARD OF REVIEW (SUMMARY JUDGMENT)

The defendants' motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  The moving party has the burden of showing that summary judgment is appropriate. *See Martco Ltd. Partnership v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009) (citing *Celotex*, 477 U.S. at 323).  Summary judgment is appropriate when the  'pleadings, the discovery and disclosure materials on file, and any affidavits show that there

---

[2]  The Court notes that the plaintiff also sued several supervisory officials and security personnel, including Warden Vernon Pittman, Major Mark Clarke, Lieutenant James Powers, Officer Aggrey Lihalakha, and Officer Kehinde Lasisi. The Court did not request an answer from these defendants because the pleadings establish that they had no requisite personal involvement with the delay or denial of timely medical care that forms the basis of Frederick's complaint. *See, e.g., Taylor v. Vicky*, No. 07-60045 (5th Cir. 2009) (observing that security officers are not deliberately indifferent by assuming that prison medical staff would manage a prisoner's care). The plaintiff also sued Dr. Edgar Hulipas and Physician Assistant Melanie Potter. In its earlier Memorandum and Order, the Court dismissed claims against Dr. Hulipas pursuant to 28 U.S.C. § 1915A, *et. seq.*  See (Docket No. 23, FN 1).  Because it appears from the complaint that these individuals actually provided prompt treatment for Frederick's injured leg by authorizing his transfer to LBJ Hospital, the pleadings do not establish delay or deliberate indifference on their part. Therefore, the claims against these defendants were also dismissed for failure to state a claim upon which relief can be granted under 42 U.S.C. ' 1983. *See* 28 U.S.C. ' 1915A; 28 U.S.C. ' 1915(e)(2)(B).

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.*, 477 U.S. at 322-23.

If the moving party meets its initial burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted). "The identified evidence 'must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial.'" *Id.* The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citation and quotations omitted). In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co*., 478 U.S. at 587-88; *Hill v. Carroll County, Miss.*, 587 F.3d 230, 233 (5th Cir. 2009). However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'" *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (quoting *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999)). The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).

Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399

(5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, a reviewing court will not assume "that the nonmoving party could or would prove the necessary facts,' and will grant summary judgment 'in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075) (emphasis in original).

The Court acknowledges that the plaintiff initially proceeds *pro se* in this instance and his pleadings are subject to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines*, 404 U.S. at 521; *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)). Nevertheless, it is well established that "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

## III.    DISCUSSION

### A.    Eleventh Amendment Immunity

All of the defendants are or were employed by TDCJ or UTMB, which are state agencies. As employees of the State of Texas, the defendants argue that the Eleventh Amendment to the United States Constitution bars any claim for monetary relief against them in their official

capacity.[3]  Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Vogt v. Board of Comm'rs, Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002).  A federal district court lacks subject matter jurisdiction where the named defendants are protected by Eleventh Amendment immunity.  *See Wagstaff v. U.S. Dep't of Educ.*, 509 F.3d 661, 664 (5th Cir. 2007) (per curiam); *see also United States v. Texas Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999).

Unless expressly waived, the Eleventh Amendment bars an action in federal court y, *inter alia*, a citizen of a state against his or her own state, including a state agency.[4]  *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).  As instrumentalities of the state, TDCJ and UTMB are immune from a suit for money damages under the Eleventh Amendment.  *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  It is also settled that the Eleventh Amendment bars a recovery of money damages under § 1983 from

---

[3]  The Eleventh Amendment states:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.

[4]  Frederick argues that the defendants are not immune from his claims for monetary damages under the Americans with Disabilities Act (the "ADA"), arguing that Congress did not validly abrogate Eleventh Amendment state sovereign immunity.  The United States Supreme Court has held that Title II of the ADA applies to state prison facilities and state prison services.  *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998) (noting that state prisons "fall squarely within the statutory definition of 'public entity'" because the ADA, 42 U.S.C. § 12131(1)(B), defines public entity as "any department, agency, special purpose district, or other instrumentality of a State or States or local government"). The Supreme Court has also recognized that, "insofar as Title II creates a private cause of action against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original). Frederick does not allege facts showing that any of the defendants intentionally discriminated against him on account of his disability.  His complaint is insufficient to set forth a claim for violation of the ADA. *See Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners.  No discrimination is alleged; Bryant was not treated worse because he was disabled.").

state employees in their official capacity.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

In this case, Frederick sues the defendants for actions taken during the course of their employment with the state of Texas. To the extent that Frederick seeks monetary damages in this case, the Eleventh Amendment bars his claims against the defendants as state employees.[5]  It follows that the defendants are entitled to immunity under the Eleventh Amendment from Frederick's claims for money damages against them in their official capacity. Accordingly, the defendants are entitled to summary judgment on this issue.

### B.      Qualified Immunity

The defendants argue further that they are entitled to qualified immunity from Frederick's claims against them in their personal or individual capacity.  Public officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity protects government employees against civil liability in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (quoting *Harlow*, 458 U.S. at 818)) (internal quotation marks omitted).  "Even if a defendant=s conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990)). Thus, the doctrine of qualified immunity "shields from civil liability

---

[5] A narrow exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect.  *See Aguilar*, 160 F.3d at 1054 (citing *Ex parte Young*, 209 U.S. 123 (1980)). Frederick does not seek injunctive relief.  Accordingly, this exception does not apply.

'all but the plainly incompetent or those who knowingly violate the law.'" *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts engage in a two-prong inquiry. *See Pearson v. Callahan*, C U.S. C, 129 S. Ct. 808, 815 (2009). The first prong of the analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established" at that time. *See id*. at 815-16; *Scott v. Harris*, 550 U.S. 372, 377 (2007) (citation omitted). The second prong of the analysis asks whether qualified immunity is appropriate, notwithstanding an alleged violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss*., 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)). A reviewing court may consider these prongs in any sequence. *See Pearson*, 129 S. Ct. at 818.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *See Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *See Michalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d

379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof," but must offer more than "mere allegations") (quotation omitted).

Frederick complains that he was denied adequate medical care in violation of the Eighth Amendment after he suffered a broken leg at the Jester III Unit on November 9, 2008. "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an  unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference under this standard, the prisoner must show that (1) the defendants were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'"

*Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference.  Nor does a prisoner's disagreement with his medical treatment constitute indifference absent exceptional circumstances."  *Id*. (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  *Id.* (citations omitted).

Frederick does not dispute that he received medical care for his broken leg.  His claim is that timely care was delayed for four days, from the time that he fell and broke his leg on the morning of November 9, 2008, until late in the day on November 12, 2008, when he was transported to LBJ Hospital for treatment.  Frederick claims that the delay caused him to suffer extreme mental angst.  He claims further that his leg has not healed properly as a result of the delay.

A prisoner may have a viable claim for delayed medical treatment where there has been deliberate indifference, "which results in . . . substantial harm."  *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) (citations omitted).  The Fifth Circuit has held that the suffering of pain is sufficient to demonstrate the requisite harm to support a delayed access to medical care claim, provided that "deliberate indifference" is established.  *Thomkins v. Belt*, 828 F.2d 298, 301 (5th Cir. 1987).

The defendants deny that care was delayed with deliberate indifference because it was not apparent that Frederick's leg was broken.  In support of their motion for summary judgment on the issue of qualified immunity, the defendants provide approximately 280 pages of

Frederick's medical records.   (Docket No.17, Exhibit A).[6] The defendants also provide an affidavit from Dr. Charles Adams, Nurse Manager Bobby Burns, and a District Practice Manager for UTMB Correctional Managed Care, Tim West.  (Docket No. 15, Exhibits B, C, D).

The medical records establish that Frederick, who was 65 years old at the time of this incident, suffered a fracture to his right femur after he fell while attempting to transfer from his bed to his wheelchair on the morning of November 9, 2008. The medical records further establish that Frederick did not see a doctor or receive an x-ray until November 12.  Frederick's broken leg required what appeared to be two surgical procedures, one on November 12, and another on November 14.  He was discharged on November 17.  A radiology report dated March 17, 2009, noted the presence of visible fracture lines and could not rule out the possibility of a "nonunion" fracture, which suggests that Frederick's injury has healed with difficulty, if at all.

Frederick insists that he showed his broken leg to nurse Scott, nurse Practitioner Smock, nurse Kunthara, and pm Dostal, and that the severity of his injury should have been obvious to each of these health care providers.  He complains that none of these health care providers summoned a physician or took any action on his behalf to authorize a transfer to a hospital so that he could receive necessary treatment for his serious injury.

Frederick's contention that medical care was intentionally or deliberately indifferent to his needs or was denied to his detriment is unmeritorious.  Contrary to his claim, the records reflect that he appeared at the infirmary with complaints about his knee.  His leg was immobilized at the knee by nurses Scott and Kunthara with a splint and wrap, and an ice pack was provided for swelling.  Nurse Smock, who was not on the premises, instructed nurse Scott to order an x-ray.  She did.  At the time, the plaintiff's vitals were within normal range and there

---

[6] The defendants have filed copies of the medical records under seal, separate from the summary judgment motion, to protect Frederick's "[p]ersonal identifying medical information."  (Docket No. 17).

was no evidence of physical pain.  Because it was Sunday, the x-ray technician was not on duty. Unbeknownst to medical staff she would also take Monday and Veteran's Day off. Nevertheless, the plaintiff received 800mg of Ibuprofen and was instructed to keep his leg elevated.  At this point, nurse Smock, who was assigned to the Jeter Unit for the day, passed her notes to nurse Kunthara when she came on duty.

Frederick returned on Monday, as instructed, but neither a physician nor the x-ray technician was on hand.  PM Dostal assured the plaintiff that the medical staff would obtain his x-ray and that he would see a physician.  Later that night, the plaintiff returned to the infirmary because of swelling in his leg and the splint and the wrap were adjusted.  Neither nurses Scott, Smock, Kunthara, or pm Dostal participated in this adjustment.   The following day was Veteran's Day and neither the x-ray technician nor a physician was available.  On Wednesday, however, an x-ray was taken, the plaintiff was examined by a physician and was hospitalized.

The undisputed evidence shows:  (a) that none of the defendants attended to Frederick more than one day; except pm Dostal who promised to help him and, in fact, informed him that he was going to the hospital; (b) pm Dostal informed the plaintiff concerning the holiday delay and checked on him daily; (c) even though the plaintiff suffered no physical pain, he was provided a ten (10) day supply of Ibuprofen; and (d) neither the plaintiff's pleading nor his response to the defendants' motion for summary judgment refutes the defendants' versions of their involvement in his medical treatment and care.

Frederick argues that he overheard unidentified nurses commenting that because he was paralyzed, he could not feel pain and refused to help him.  These remarks, if true, do not establish that medical treatment was delayed or denied.  At the time, the x-ray technician was on holiday leave.  And, while one may argue that the remarks were insensitive, insensitive remarks

do not violate the Eighth Amendment.  There is no constitutional right to be spoken about with sensitivity.  *See Wernecke*, 591 F.3d at 392.  Moreover, all of the medical care that the defendants were qualified or authorized to provide was performed.  Therefore, the defendants and Dr. Holipas are entitled to qualified immunity.  *See Harlow*, 457 U.S.

IV.    **CONCLUSION AND ORDER**

Based on the foregoing, the Court **ORDERS** that the motion for summary judgment [Docket Nos. 15 and 98] are **GRANTED** in their entirety**.**

SIGNED on this 23rd day of September, 2014**.**

_____
Kenneth M. Hoyt
United States District Judge